35 Mich. App. 643 (1971)
192 N.W.2d 594
PEOPLE
v.
KURZ
Docket No. 9417.
Michigan Court of Appeals.
Decided August 30, 1971.
James J. Rostash, Prosecuting Attorney, for the plaintiff.
James K. Robinson, for defendant on appeal.
Amici Curiae: American Civil Liberties Union of Michigan, by Joel M. Shere; State Bar of Michigan, by Michael Franck; American Trial Lawyers Association, Michigan Chapter, by George V. Warren.
Before: DANHOF, P.J., and McGREGOR and LEVIN, JJ.
Leave to appeal denied, 387 Mich 756.
LEVIN, J.
The appellant, Walter A. Kurz, is a lawyer. He represented Joseph John Bates who, following a jury trial, was convicted of driving while under the influence of intoxicating liquor, second offense.[1]
After the trial, Kurz was cited for contempt of court based on his conduct during the trial. The contempt charges were tried before the same judge who presided at the trial. One hundred seven separate acts of contempt were charged, and Kurz was convicted of 106 of the charges. He was sentenced to serve 152 days and 7 hours in jail and was fined $9,550. We reverse.
*646 Bates was convicted and sentenced in June 1969. The order to show cause citing Kurz for contempt was issued nine months later, on March 26, 1970.
The order to show cause recites that the prosecutor and Kurz estimated that Bates' trial would require 2 days and that in actuality it took 6-1/2 days and 3 nights to try. The recitals continue: "During the first three days of trial counsel made numerous statements, interrupted questioning by opposing counsel, interrupted the court while speaking, made approximately 125 objections, required that the jury be excused approximately 14 times over and beyond regular excusals for recesses and adjournments and otherwise hindered the trial". On the morning of the fourth day of the trial the court, "having determined certain rules were essential to the conduct of the trial, set the following such rules to govern the conduct of counsel during the trial and warned counsel that any counsel who violated any rule would be in contempt of court.
"1. Neither counsel shall interrupt the judge while the judge is speaking;
"2. No motions will be made in the presence of the jury, except to strike testimony or to instruct the jury to disregard or for other good cause;
"3. No motion for mistrial shall be made in the presence of the jury;
"4. No facetious question will be asked or facetious remark will be made;
"5. Neither counsel shall address each other, or the jury except, of course, upon argument at the conclusion of the case;
"6. Any counsel who wishes to object to testimony shall state that he objects and then state succinctly the reason for the objection. Grounds for the objection must be stated with perspicuity.
*647 "7. After the court has ruled on any matter, neither counsel shall argue that same matter or again object to the same matter. Of course, this does not prevent counsel from objecting to subsequent matters which are raised after the court's ruling. In such an event, counsel should indicate a continuing objection;
"8. No objection to any question shall be made after the answer has been given;
"9. No counsel shall object to any question until the question has been completely finished  stated."
Excerpts from the transcript tending to support the 107 separate charges were set forth in the order to show cause. See Appendix for the text of about half of the excerpts.[2]
Substantially all the charges grow out of the manner in which Kurz voiced objections to questions propounded by the prosecutor. It is claimed that on 17 occasions Kurz stated his objection too early  before the question was fully stated; on another 17 occasions he stated his objection too late  after an answer had been given; that on 15 occasions he did not state the objection succinctly and with *648 perspicuity; on 43 occasions he made an unnecessary objection either because he had obtained or was entitled to a continuing objection, or he reargued an objection upon which the court had already ruled; on 11 occasions, primarily in the course of stating or arguing objections, he interrupted the judge; on one occasion during the course of registering an objection he addressed opposing counsel; and that on 2 occasions in responding to the court he made a facetious remark.
While there was a stenographic record and, as well, an electronic recording of the Bates trial proceedings, the contempt citation was tried on a 53-page transcript consisting solely of the excerpts set forth in the order to show cause. The relative brevity of this transcript can be appreciated when it is considered that with 107 citations the excerpt for each charge averaged one-half page of transcript.
The hearing on the order to show cause was set for April 9, 1970. Before the hearing, Kurz moved to disqualify the judge and for a continuance, and asked to be furnished with the electronic recording of the Bates trial proceedings and a transcript of the stenographic record of the trial. The motions were noticed for Friday, April 3. The court, on its own initiative, adjourned the motions until the return date set for the hearing on the order to show cause. On the return day, April 9, the motions were denied.[3]
*649 During the hearing Kurz addressed the judge as follows:
"Proceeding in the heat of a courtroom battle, I did not willfully or intentionally at any time in any way whatsoever intend to commit the contemptuous act to the court, I did not intentionally or willfully wish to express any disobedience to the court's orders. I did not intentionally or willfully intend to express any opinions or any arguments meant as a direct attack on the court or its authority of any kind. * * *
I had, more or less, been made aware of certain rules laid down in various cases, that it is very difficult sometimes to distinguish where the art of advocacy leaves off and the element of contempt attaches. I just simply at any point of time did not intentionally or willfully engage in any activity or any utterances which were meant or intended as a willful attack or intended act towards the dignity or authority or the decorum of the court."
The judge responded:
"Mr. Kurz, having sat through the entire trial, I find this very difficult, in a sense, to believe. I don't know whether they were intentional or not. I do know that the effect of them, though, was as I mentioned. Whether they were intentional or not I think only you could tell us. I make no comment or judgment on that at all."
The judge then took up each of the separate charges. On each separate charge Kurz stood mute and, when asked if there was anything he would like to say, responded through his lawyer: "Not *650 without the benefit of the full transcript". He was then found guilty on the charge and the court proceeded to take up the next charge.
After the court had gone through the 107 separate charges and convicted Kurz of 106, sentence was imposed as follows: No punishment was imposed for the first conviction. For the second conviction Kurz was fined $5 and the fine was increased $5 for each succeeding conviction, e.g., $10, $15, $20, through the 20th conviction. A fine of $100 was imposed for the 21st conviction and for each of the remaining convictions. In addition, a sentence of one hour was imposed for conviction No. 22 and an additional hour for each additional conviction, e.g., 2 hours, 3 hours, 4 hours.
In that manner the court set fines aggregating $9,550 and a jail sentence of 3655 hours, or 152 days and 7 hours. Service of the sentence has been stayed pending this appeal.
The convictions and sentences are challenged on a number of grounds. Our disposition makes it unnecessary for us to consider all of them.[4]
I.
"The power to punish for contempt is awesome and carries with it the equally great responsibility *651 to apply it judiciously and only when the contempt is clearly and unequivocally shown." People v. Matish (1971), 384 Mich 568, 572. (Emphasis supplied.)
In People v. Ravitz (1970), 26 Mich App 263, 269, we said that in reviewing a contempt citation of a lawyer for his conduct during a trial, we are ever mindful of the importance of maintaining a proper balance between the trial judge's right "to maintain discipline and decorum in his court, and the right of counsel to fulfill to the ultimate the obligation of advocacy".
It has also been observed that, "A lawyer cannot be timorous in his representation. Courage and zeal in the defense of his client's interest are qualities without which one cannot fully perform as an advocate".[5]
Unless a lawyer's conduct manifestly transgresses that which is permissible it may not be the subject of charges of contempt. Any other rule would have a chilling effect on the constitutional right to effective representation and advocacy.[6] In any case of doubt, the doubt should be resolved in the client's favor so that there will be adequate breathing room for courageous, vigorous, zealous advocacy.[7]
Kurz was punished for past conduct, not to deter future conduct. Since the purpose sought to be achieved by lodging the contempt charges against Kurz was not to deter him from continuing the course of conduct found to have been in violation *652 of the nine rules but rather to punish him for disobedience of those rules, the contempt charges in this case were criminal, not civil.[8]
An essential element of the crime of criminal contempt is that the defendant acted culpably, in "wilful disregard or disobedience of the authority or orders of the court".[9] The judge in this case made no finding that Kurz acted in bad faith by engaging in a willful, deliberate course of contumacious conduct. Indeed, he said that while he found Kurz's disavowal of intentional wrongful very difficult to believe, he was not making any comment or judgment on the question of intent. The judge found Kurz guilty because he had violated the rules without regard to whether the violations were willful.
At no time after announcing the nine rules did the judge, during the remaining 3-1/2 days and nights of trial, state that Kurz had committed an act of contempt, or that he had violated one or another of the nine rules either by the timing of his objection, *653 interrupting another speaker, continuing to argue, or otherwise.
The judge referred to the nine rules as "generally observed by all counsel". But these rules, although generally observed, cannot always be observed.
While in announcing the nine rules the judge did forewarn Kurz and the prosecutor of the conduct proscribed, Kurz could understandably believe, in the light of the judge's unbroken silence during the remaining 3-1/2 days and nights, that his conduct had not transgressed that which was permissible and was not thought by the judge to be contemptuous.
There is no room in our system of justice for inflexible rules of conduct. In applying the generally observed norms of conduct, a judge must make a balanced value judgment case by case. This cannot be avoided by a mechanical approach, with rigid commandments, inflexible administration, and automatic contempt citations for those who stray across the line.
While ordinarily a lawyer should not object to a question until it is fully stated, sometimes his duty to his client will require that he object before the question is completed. The question itself may carry with it an innuendo which is objectionable. Moreover, it is sometimes unclear when a speaker has finished speaking. And, while common courtesy requires that a lawyer not interrupt another speaker, it is entirely too rigid to punish for contempt merely because of an interruption. Had the judge objected to an interruption and asked Kurz to desist and Kurz, nevertheless, insisted on having his say first, an entirely different question would be presented for our consideration. In no instance does the record show that Kurz continued to speak after he *654 was asked to stop speaking; this distinguishes this case from the kind of disruptive displays which have figured prominently in recent public press.
It was beyond the power of the court to promulgate rule 8: "No objection to any question shall be made after the answer has been given". The fact that a question is objectionable may not be instantly apparent even to an experienced lawyer. A lawyer may not think of the objection until some time after the question has been answered. He may, when the defect becomes apparent, nevertheless, object and, if the objection is well taken, he would be entitled to have the question and the answer stricken. A cautionary instruction might be appropriate. In an unusual case, his client might even be entitled to a mistrial.
We have examined the objections voiced in the 15 instances where it is claimed that the objections were not stated succinctly and with perspicuity, as required by rule 6. Pithy and trenchant expression is much to be preferred to a meandering redundancy. However, some persons are laconic and others naturally garrulous in their speech habits. A court, of course, has the right to insist on reasonable economy and to control the time consumed in voicing objections. Having examined the charges of violating rule 6 (see Appendix for typical examples), we find that the record does not bear them out.
Turning to the 43 charges that Kurz repeated arguments or objections based on the same matter, we again have concluded that the record does not support a finding of contempt. (See Appendix for typical examples.) While a lawyer should "comply promptly with all orders and directives of the court * * * he has a right to make respectful requests for reconsideration of adverse rulings".[10]
*655 In the vigorous representation of his client's interests, the lawyer's duty may require that he "resist the wishes of the judge on some matters, and though his resistance should never lead him to act disrespectfully, it may require him to appear unyielding and uncooperative at times. In so doing, he does not contradict his duty to the administration of justice but fulfills his function within the adversary system".[11] A litigant's lawyer has as much right to be in the courtroom as the judge, and as much right to be heard.
Finally, one instance of addressing opposing counsel does not, in our judgment, warrant a finding of contempt, nor were the allegedly facetious remarks such an affront to the dignity of the court as to warrant a finding of contempt of court.
It is significant that the transcript of the excerpts establishing the 107 separate charges is only 53 pages in length. This indicates that although it is contended that Kurz by his objections or the manner in which they were voiced delayed the trial of the case, the total delay attributable to these objections could not have been as much as a few hours.
Kurz was not, however, charged with delaying the trial of the Bates case for 3-1/2 needless days and 3 needless nights. If that were the charge, and if the record showed that, although the court was attempting to control the time consumed, Kurz persisted, in violation of proper directives by the court, in offering cumulative and unnecessary evidence, we might well view the matter differently.
A judge has the right  indeed he has the obligation  to control the proceedings, and to see to it *656 that the court's business is dispatched in an orderly and expeditious fashion. But a delay of a few hours attributable to the voicing of objections some of which, in retrospect, may appear unnecessary or repetitive, and a few anticipatory or belated objections and interruptions of the judge or opposing counsel, which are not in themselves especially time consuming and to which the judge at the time voices no objection, does not justify the action taken by the court in this case.
II.
We are also satisfied that the contempt charges should have been heard by a circuit judge other than the one who presided at the trial and who issued the order to show cause citing Kurz for contempt.
The contempt power is frequently spoken of as an inherent power of the court.[12] Its source is the duty of the court to preserve its own effectiveness, to sustain its power. The same necessity which gives rise to the contempt power permits the court, where immediate corrective action is necessary, to vindicate its dignity and authority by punishing summarily any lawyer, litigant, witness, or other person who, in the judge's presence in open court, willfully and contumaciously obstructs the administration of justice. But the necessity which gives rise to the power marks its boundaries: "the limits of the power to punish for contempt are the least possible power adequate to the end proposed".[13]
Courts have for a long time reasoned that since a judge has the power to punish summarily for a *657 contempt committed in his presence he should enjoy the same power when he defers citation and punishment of the offender until the conclusion of the trial.[14]
There has, however, been increasing recognition that the somewhat anomalous contempt power ought to be confined and its exercise attended by adequate procedural safeguards for the protection of the contemnor.[15] The doctrine that a judge may summarily punish for contempt committed in his presence even though he defers citation and hearing of the citation until the conclusion of the trial has recently been reconsidered. In Mayberry v. Pennsylvania (1971), 400 US 455 (91 S Ct 499, 27 L Ed 2d 532), the defendant in a criminal case elected to defend himself. After he was convicted, the same judge who presided at the trial cited and convicted him of 11 charges of contempt of court.
*658 The judge in the Mayberry case had been subjected to continuous insults. He was called "a dirty son of a bitch", "dirty, tyrannical old dog", and the like. While the judge responded with commendable restraint and did not become a combatant, the United States Supreme Court concluded that a judge vilified as was this judge "necessarily becomes embroiled in a running, bitter controversy. No one so cruelly slandered is likely to maintain that calm detachment necessary for fair adjudication". The defendant, ruled the United States Supreme Court, was entitled to have the contempt charges tried before another judge.
In June of this year, the United States Supreme Court reversed a criminal contempt conviction on a number of grounds. Johnson v. Mississippi (1971), 403 US 212, 214-216 (91 S Ct 1778, 1779; 29 L Ed 2d 423, 426). Not only had the judge in the Johnson case deferred taking action until after the trial was over, but, said the Supreme Court, it was not clear that he was aware of the contumacious conduct when it occurred and, additionally, he had become so enmeshed in matters involving the contemnor as to make it appropriate for another judge to sit. Although the alternative grounds of decision weaken the authority of what was said by the Supreme Court at the outset of its opinion, it appears from what the Court did say that it is moving toward a per se rule requiring another judge to sit in every case where the contempt citation is deferred until after the trial. The Court declared:
"Instant action may be necessary where the misbehavior is in the presence of the judge and is known to him, and where immediate corrective steps are needed to restore order and maintain the dignity and authority of the court. Cooke v. United States (1925), 267 US 517, 534, (45 S Ct 390, 394, 69 L Ed *659 767); Harris v. United States (1965), 382 US 162, 165 (86 S Ct 352, 354, 15 L Ed 2d 240). The contempt power is within the judge's `arsenal of authority' which we recently described in Illinois v. Allen (1965), 397 US 337 (90 S Ct 1057, 25 L Ed 2d 353). But there was no instant action here, a week expiring before removal of the case to the Federal court was sought."
We have concluded that, although the judge who sat in this case may not have been constitutionally barred from sitting because in this case Walter Kurz did not at any time personally insult or attack the judge in any way whatsoever,[16] the sound administration of justice requires, in the light of the Mayberry rule,[17] that in every case where a judge defers consideration of a contempt citation until after the conclusion of the trial the charge must be considered and heard before another judge.[18]
It is not in the interest of the sound administration of justice to encourage persons charged with or *660 convicted of criminal contempt to search the transcript of proceedings and attempt to demonstrate that the trial judge acted out of personal animosity, or became personally embroiled, or that his objectivity can reasonably be questioned. (See fn 16).
Subtle judgments will be involved. In this case it is argued that the length of the sentence, the judge's taciturnity in noting but not voicing his objections, his delay in citing Kurz until after the appeal time had run on Bates's conviction, and his denial of a continuance and of an opportunity to obtain a complete transcript of the Bates trial, all evidence personal animosity.
We think it unseemly, as well as a poor use of time, to indulge in a painstaking evaluation of whether a judge became personally embroiled or lost objectivity. In cases such as this, where there is no personal attack on the judge, where the question of his personal involvement in the controversy is doubtful, he should be able to disqualify himself without having to declare that there is a reasonable question about his objectivity, and we should be able to dispose of these cases without having to make an inquiry concerning the objectivity of the judge.
Nor do we think it to be in the interest of justice to allow those defendants who personalize their attacks and are the most abusive a trial before another judge, while denying a trial before another judge to a lawyer who has conducted himself decorously and who is charged with having transgressed the bounds of permissible advocacy.
Accordingly, we conclude that in the absence of circumstances necessitating immediate corrective action a person accused of contempt by a trial judge should be tried before a different judge, one not involved in the subject matter of the contempt or in the citation of the contemnor.
*661 "Justice must satisfy the appearance of justice." Offutt v. United States (1954), 348 US 11 (75 S Ct 11, 99 L Ed 11). "Time and again this Court has said that justice must not only be done but must manifestly be seen to be done." Rex v. Bodmin Justice, [1947] KB 321, 325.
Also pertinent are the observations of Mr. Justice White, speaking for the United States Supreme Court in Bloom v. Illinois (1968), 391 US 194, 208 (88 S Ct 1477, 20 L Ed 2d 522):
"We cannot say that the need to further respect for judges and courts is entitled to more consideration than the interest of the individual not to be subjected to serious criminal punishment without the benefit of all the procedural protections worked out carefully over the years and deemed fundamental to our system of justice. Genuine respect, which alone can lend true dignity to our judicial establishment, will be engendered, not by the fear of unlimited authority, but by the firm administration of the law through those institutionalized procedures which have been worked out over the centuries."
Reversed.
All concurred.

APPENDIX
Forty-one pages of the 43-page order to show cause consist of the excerpts from the record of proceedings at Bates' trial upon which Kurz' contempt convictions were based. We set forth below the complete text of the excerpts on 16 pages of the order to show cause (pp 17-32). These excerpts form the basis for 49 of the contempt convictions; the breakdown is as follows:

*662
 Convictions Total
Rule pp 17-32 Convictions
1 8 11
2 No violations No violations
3 " "
4 1 2
6 10 15
7 13 43
8 10 17
9 7 17
 ___ ____
 49 105

We also set forth an excerpt from page 7 which is the basis of the only conviction for violation of rule 5. On the strength of this excerpt, Kurz was also convicted of violating rules 6 and 9.
In total, the excerpts in this appendix provide the basis for approximately 1/2 of the convictions  52 of the 106 convictions.

Mr. Sullivan: * * * He decided not to call in but to tell someone else. Now before he went over there 

Mr. Kurz (interrupting): What's he doing? Making a statement or is he asking the witness a question? I object.
Mr. Sullivan: Well, I'm trying to ask a question.

Mr. Kurz: You didn't ask the question. You made a statement. I object to it.
* * *

Mr. Kurz: Well, your Honor, I inquire, does that mean we're still going to adjourn at quarter to nine like you said we would earlier?

*663 The Court: No, we would not need to under these circumstances. The quarter to nine recess was only to allow Mrs. St. Bernard to get home to babysit for herself rather than to have someone else come in.

Mr. Kurz: Well, I would  I have a motion to make to the  your Honor. Sorry.
The Court: The jury is excused.
(Jury leaves the courtroom.)

Mr. Kurz: If your Honor please, on the basis of what you said earlier, that we were going to adjourn at quarter to nine, I issued the subpoenas that I just told you a moment ago for appearance of these two witnesses tomorrow morning, because I didn't think that we could proceed as hastily as we did and finish up before 9 o'clock and that's the reason I need these two witnesses in the morning.

The Court: There was no definite time established. Mrs. St. Bernard indicated earlier that she would have to leave at a quarter of nine unless she gets some babysitter.

Mr. Kurz: Are you telling me that the court arranged a babysitter for her?
* * *

Mr. Sullivan: I see. Then after  you know that he was not taken home by a police officer before 7 a.m. After 7 a.m. you don't know, is that correct?
Sgt. McCormick: That is correct.

Mr. Kurz: He didn't say that. I object to the conclusion drawn by the prosecutor. I'm sure that the testimony doesn't reveal *664 that. That he was sure that he wasn't taken home before 7 a.m.
* * *

The Court: We are to proceed with the case at this time and it is the defendant's case, it is for the defendant to produce whatever evidence, including testimony, he wishes to produce at this time.

Mr. Kurz: And I state to you again that I am without three essential witnesses that I have subpoenaed for tomorrow morning.

Mr. Sullivan: Suppose that  If the court please, I would ask that the jury be instructed to disregard Mr. Kurz' 

The Court: The jurors will disregard this remark completely. It was uncalled for and should not have been made, so disregard it completely, wipe it out of your minds. A totally improper remark. If you have any witnesses to produce, produce them, Mr. Kurz.
Mr. Kurz: Call Mr. Bates to the stand.
* * *
The Court: The jurors are excused for a short time.
(Jurors leave the courtroom.)
The Court: How is that relevant at this time?

Mr. Kurz: Your Honor, it's my understanding under the law that even though the court has ruled that statements were voluntarily made, defendant is still permitted to fully present to the jury the circumstances under which he was at the police station, this includes whether or *665 not he had an attorney, whether he was allowed to call one, all the circumstances intended making his  the statements that the police claim.
The Court: We've already ruled upon 

Mr. Kurz (interrupting): We're  excuse me, your Honor. I'm sorry, I wasn't through.
* * *

The Court: The defendant is making no claim then that he was deprived of his right to counsel, is that right?
Mr. Kurz: Yes, he is making a claim.

The Court: Did we not determine this at our many 
Mr. Kurz (interrupting): Well, 

The Court: Just a moment. At our many pre-trial hearings that we held, before trial hearings perhaps would be a better way of terming it. If he has asked for an attorney 

Mr. Kurz (interrupting): May I sit down a moment your Honor? I'm rather tired, I'm sorry.
* * *
(In absence of the jury.)

The Court: I believe I know what you're saying, or attempting to say, but you may go into whatever happened at the police station but not with the idea of arguing to the jury then that the statements were not made voluntarily for the reason that he had no counsel. If he says he wanted counsel and none was offered to him, that together with any other thing that happened at the police station is admissible, *666 if it's relevant. I would assume that whether he asked for counsel would be relevant on two or three bases, but then to state, but I will not permit argument to the jury in any form that he was thereby deprived of a right so as to render any statements inadmissible. Now is that ruling clear?

Mr. Kurz: It's clear, but I take issue with your Honor. I don't understand the law to be that, and that's the reason I'm questioning the witness in this. My understanding is that ah  of reading these cases, like I say if I'm wrong I'm presenting what I believe to your Honor, you overrule me this is your province, I'm not disputing that, but I'm saying that the defendant again, the way I read the cases, again has the right to go into the same matter that was raised with the court.
* * *
The Court: Well, we do have 

Mr. Kurz (interrupting): Once with the court, once with the jury, is what I'm driving at.
* * *
Mr. Bates: Driving under the influence.
Mr. Kurz: And how did you plead to that?
Mr. Bates: Stood mute, I believe.

Mr. Kurz: And that was explained to you to mean what?

Mr. Sullivan: Objection, your Honor. I don't think this is relevant to facts in this case. We're concerned with whether he was under the influence while he was driving *667 on the highway, not what happened in court the next day.
The Court: Objection is sustained.

Mr. Kurz: Your Honor, please, I'd like to make  I'd like opportunity at least to answer the prosecutor's motions, your Honor, and to inform the court as to the purpose of the question.
The Court: Objection is sustained.

Mr. Kurz: I'd like to bring a motion before the court.
The Court: Jurors are excused.
(Jurors leave the courtroom.)

Mr. Kurz: If your Honor please, I make a motion that the court allow me to present testimony and offer proof as to what this person has pleaded in this case. I respectfully submit to the court whether or not the question in its form was overruled or its contents, I'm not sure of, but I would suggest to your Honor and claim that a party to a lawsuit, particularly a defendant in a criminal case, has a right to have the jury know what his plea was to charges and what his plea is to the charge in the case, and that plea being of not guilty.
* * *

The Court: Now, the jury is excused again. I'm going to rule out the answer to that question 
Mr. Kurz (interrupting): All right, your Honor.

The Court (continuing): and rule that the question should not be asked even. No bearing on this case at all.

*668 (Following Harris Lapp's excusal from the courtroom.)

Mr. Kurz: May I have a moment, your Honor? There's another record that I'd like to look at here. I haven't seen it. He just brought it.

The Court: Well, I don't know that he just brought it. Let's get on with the case here. (pause) Let the record show Mr. Kurz has left the courtroom. (pause)

The Court: Tell Mr. Kurz to get in here, bailiff. (pause)
Note: Mr. Kurz showed contempt for the court in the presence of the jury, by leaving the courtroom in violation of the court's order to proceed with the case.
* * *

Mr. Sullivan: And how many times have you been arrested for felonies?
Mr. Bates: None that I know of.

Mr. Kurz: Object to arrests, your Honor. It's improper questioning. He can  it's not (pause)
* * *
The Court: The objection is overruled.
* * *

Mr. Sullivan: Haven't you been arrested for felonious assault?
Mr. Bates: I was charged with it, yes.
Mr. Sullivan: Were you arrested for it?

Mr. Bates: Charged, arrested, I don't know the difference.
Mr. Sullivan: You don't?
Mr. Bates: No, I do not.
Mr. Sullivan: You were just charged with it?
*669 Mr. Bates: I was charged with it, yes.

Mr. Sullivan: Okay, and that was a felony wasn't it?
Mr. Bates: I don't know whether it was or not.

Mr. Kurz: If your Honor please, the question was arrested and convicted. Now he's trying to make it look like the witness has answered improperly. He merely asked the witness arrested, and I object again to the question and the manner in which he is questioning the witness on a mere arrest. I  I say it's improper, your Honor.

The Court: I've already ruled on that, Mr. Kurz. Objection is overruled.
* * *

Mr. Sullivan: How many times have you been arrested and convicted of driving under the influence of intoxicating liquor, Mr. Bates?

Mr. Kurz: Going to object, your Honor. It is not relevant to the offense charged.
Mr. Sullivan: It's not 

Mr. Kurz (interrupting): It's not material or relevant.
The Court: Objection is overruled.
* * *

Mr. Sullivan: How many times have you been arrested after January 31st, 1968, Mr. Bates?
Mr. Bates: Arrested? Once.

Mr. Kurz: If your Honor please, I make a continuing objection to the harassment of the witness on the question of arrests.

*670 The Court: The witness is not being harassed in any way, shape or manner as far as I can observe, Mr. Kurz. I've ruled on that twice. The objection is overruled.
* * *

Mr. Kurz: If your Honor please, I would like to make a motion in the absence of the jury at this time.
The Court: The jury is excused.
(Jurors leave the courtroom.)

Mr. Kurz: If your Honor please, I addressed myself previously to the court as far as inquiry of the defendant is concerned regarding any prior conviction for the same offense. I made my objection and I respectfully submit, your Honor, that unless, it is my claim that unless the conviction was a felony it could not be inquired about at this trial.
* * *
(Jurors return to the courtroom)

Mr. Sullivan: Mr. Bates, my question again is how is it that you tell us you've never had any problem with drinking when, in fact, you admitted having been arrested and convicted several times for public intoxication 

Mr. Kurz (interrupting): You use the word several times now. Several denotes more than six, your Honor, and I  it's improper use of the word. There's no evidence substantiating the use of that word.
* * *

Mr. Sullivan: How is it, Mr. Bates, that you tell the jury now that you have no *671 drinking problem when, in fact, the evidence here shows various arrests and convictions for public intoxication 
Mr. Bates (interrupting): What evidence?

Mr. Kurz: Your Honor, again that's improper statement. I think we agreed upon what he was supposed to say.
* * *
Mr. Sullivan: Would you like to estimate 
Mr. Kurz (interrupting): In terms of feet.

Mr. Sullivan: You will have an opportunity to ask this witness questions again, Mr. Bates, but I'll ask him. About how high would you say this is? Approximately?
Mr. Bates: I'd say six inches higher than this.
* * *

Mr. Sullivan: Mr. Kurz, sorry. Could you estimate  Mr. Kurz would like you to estimate about high this is from the floor.
Mr. Bates: I'd say 

Mr. Kurz (interrupting): Well, he's sitting above it. I'm sorry. I don't know whether he can do it from there, counsel. He's sitting way above 
* * *

Mr. Kurz: Going to object to the use of the information for questioning. This is improper use of the information and it  it attaches a veracity to the information to which it's not entitled.

*672 Mr. Sullivan: Well, I'd just like to ask this man what elements of this charge he admits and which he denies. I think it'll make it a little easier for the jury in deciding the question to see how many of these elements he admits. He's taken the stand, this is cross-examination.
The Court: The objection 

Mr. Kurz (interrupting): I object to the use of the information, your Honor.
* * *

Mr. Sullivan: And you have no basis for that opinion do you, Mr. Bates?

Mr. Kurz: Well, I resent the way the prosecutor is addressing the witness. I 
* * *

Mr. Sullivan: Now didn't you tell us before that you refused to sign some other paper because your reason was that the information was not correct on that piece of paper?
Mr. Bates: I did not.
Mr. Sullivan: You didn't tell us that?
Mr. Bates: No. I don't believe I did.

Mr. Sullivan: Okay, let me ask you. What was the reason you gave for failing to sign the other piece of paper?
Mr. Kurz: What other piece of paper?
* * *

Mr. Sullivan: You mean you think that a lot of police officers, if you weren't under the influence at all, would do something with this machine or come into court and testify falsely as to the results?

*673 Mr. Bates: I believe it is a complicated machinery to run in the first place and 
Mr. Kurz (interrupting): If your Honor please.

Mr. Bates (continuing):  the people have to go to school 

Mr. Kurz (interrupting): I object now. I'm getting into an area where the witness is called upon to analyze the effectiveness, the efficiency, and the reliability and the workability of the machine by being asked general questions which require the witness to draw an unfounded conclusion which he, as a layman, not being a machine operator, is impossible for him to do and all these questions that have been asked of him in the line of conjecture and surmise and asking for opinions on the part of the witness. I respectfully submit that they are improper in that line.

Mr. Sullivan: I'm just trying to cross-examine this witness, your Honor. He's testified that he was perfectly sober and I'm just trying to ask him and determine if he was perfectly sober why he didn't take some kind of a test.
The Court: The objection is overruled.

Mr. Kurz: He offered to take a test. The question is improper 

Mr. Sullivan (interrupting): Objection to Mr. Bates trying to testify at this time.

Mr. Kurz: Why didn't he take some sort of test? This is not based upon the evidence, your Honor. He said he volunteered to take a blood test but a blood test was not completed or arranged for him.
*674 Mr. Sullivan: I ask that Mr. 
The Court (interrupting): Are you all done?

Mr. Kurz: I object to the form of the question and, and, and being an unfair question and calling for an unfair result.
Mr. Sullivan: I ask that Mr. 
The Court (interrupting): Are you all done now?
Mr. Kurz: Yes, your Honor.

The Court: The jury will disregard what Mr. Kurz has said. Objection is overruled. Proceed.
* * *

Mr. Sullivan: Both of these cars were right there at the time?
Mr. Bates: Both of those cars were right there.

Mr. Sullivan: Now is this the usual procedure for not reporting to work?

Mr. Kurz: Your Honor, all this material has been asked and answered once.
* * *

The Court: This is true, but the witness is here prepared to testify at this time and this is the first time we've heard of the nature of this objection, Mr. Kurz. So 
Mr. Kurz (interrupting): Well, I didn't know 

The Court (continuing):  the objection is overruled.

Mr. Kurz (continuing):  the witness was here until he was produced just a little while ago.
*675 The Court: Objection is overruled. Go ahead.
* * *

Mr. Sullivan: Well, perhaps I'd better ask you the questions because there's certain matters that aren't proper for us to bring in so let me just ask the questions, if I may. Have you since determined that, in fact, there usually is some kind of a charge connected with 

Mr. Kurz (interrupting): Leading question. Objection.

Mr. Sullivan (continuing):  with taking of a blood test? (pause)
The Court: Answer the question.

Mr. Hiltz: Okay. There is a normal emergency room charge for patients seen in the emergency room.
Mr. Sullivan: That's all?

Mr. Kurz: If your Honor please, I had an objection. I'd like a ruling on the objection.

The Court: The objection came in the middle of the question and was not repeated after the question was finished, Mr. Kurz.

Mr. Kurz: That portion of it that was suggested by a  objected to immediately  it was suggested  that portion which was suggested I objected to your Honor.
* * *

Mr. Sullivan: Now what is  is your testimony that you're giving now based on anything that I told you or anything that Mr. Kurz told you or is it based on something else?

*676 Mr. Hiltz: My testimony is based, at this point, one, on reviewing the philosophy as it is understood by the Director of Nursing, by the night supervisor primarily, and reviewing the records that we had 

Mr. Kurz (interrupting): I'm going to object to the word "understood" and the basis for the conclusion as hearsay, your Honor.
* * *
Mr. Sullivan: That is a type of a voucher 

Mr. Kurz (interrupting): Going to object to that your Honor, as continuously injecting hearsay and it's a constant line of  of trying to reveal as to what the attitude and the opinion and the practice of other people is concerned I think is hearsay.
* * *

Mr. Sullivan: To the best of your knowledge is there taxicab service available in the City of Monroe at the time that you were arrested?
Mr. Bates: Yes.
Mr. Sullivan: Was your other 

Mr. Kurz (interrupting): That you were arrested? If he was under arrest, your Honor, I submit he couldn't call a taxi or go anywhere.
The Court: Proceed, Mr. Sullivan.

Mr. Sullivan: And also at the time you returned home your other automobile was home and available, was it not?

Mr. Kurz: What time did he return home is the prosecutor suggesting at this point?
* * *

*677 Mr. Sullivan: Mr. Bates, why didn't you tell me that when I asked you before?
Mr. Bates: Ask me what before?

Mr. Sullivan: When I asked you before "why didn't you take your blood test" and gave you some period of time to answer while I went over here and sat down, you said "well, the only reason 

Mr. Kurz (interrupting): Well, I'm going to object to this now, your Honor. He's chewing the witness out and I think it's improper.
* * *

Mr. Sullivan: I see. You mean that your answers are not  you mean they've been changing with my attitude?
Mr. Bates: Not really, no.

Mr. Kurz: Going to object to that suggestion, your Honor. I think that's an unfair suggestion to the witness.
* * *
Mr. Sullivan: Do you know him pretty well?
Lt. Quick: Yes, I know him pretty well.

Mr. Kurz: Going to object. "Pretty well" is a conclusion unless its predicate is laid for that, proper foundation. It could have all kinds of meanings, your Honor.

Mr. Sullivan: I think let the jury determine what the meaning is.

The Court: The question has been asked and answered.
* * *

Mr. Sullivan: What did he see you about? What did he say?

*678 Lt. Quick: Mr. Bates, of course, at that time was under arrest for driving under the influence and he expressed a desire to get out of jail so that he might report to work and not lose his job. He had been employed at Ford Motor Company for a number of years and he wanted to make his shift in the morning 

Mr. Kurz (interrupting): I object to all his testimony now, your Honor, as being irrelevant, incompetent and immaterial in the sense that it is not related to the offense charged here.
* * *

Mr. Kurz: If your Honor please, I respectfully submit to the court that you just do not give me any opportunity to answer the prosecutor when he makes a motion. I respectfully submit to your Honor that every motion is made and the grounds are stated I should have an opportunity to rebut same. I don't get that opportunity with your Honor.

The Court: The witness answered that he did not get into the aspect of the tests and the questions you've asked are argumentative, clearly argumentative.

Mr. Kurz: Well, I  I take issue with your Honor. I do not  I  I 
The Court: Bring in the 

Mr. Kurz (interrupting): I am not arguing with the witness. I'm asking him questions. I think it's an unfair limitation. My motion was that I think your Honor 
The Court (continuing): Bring in the jury.

Mr. Kurz: My motion to the court is *679 that I think your Honor is unfairly prejudicing the defendant's cause by unfairly limiting my cross-examination upon suggestions by the prosecutor that my questions are argumentative.
* * *

Mr. Sullivan: Now, officer, did you take part in this investigation in any respect whatsoever?
Lt. Quick: No, I did not.

Mr. Sullivan: Is this a policy, if one of your friends or acquaintances are involved in something like this that some other officers 
Mr. Kurz (interrupting): Going to object to that.
* * *

Mr. Sullivan: Do you recall anything about his condition at the time you observed him?

Lt. Quick: Well, I thought Mr. Bates was under the influence at the time.

Mr. Kurz: I'm going to object to that, your Honor. It has  this is why I move that that answer  question and answer be stricken.
NOTES
[1] MCLA § 257.625 (Stat Ann 1968 Rev § 9.2325).
[2] No violations of rules 2 and 3 (concerning motions in the presence of the jury) were charged. The 106 rule violation charges of which Kurz was convicted break down as follows:

 Number of
 Violations
 Charged Nature of Violation Rule #
 11 Interrupting the judge 1
 2 Facetious remarks 4
 1 Addressing opposing counsel 5
 15 Failure to state reason for an objection succinctly
 and with perspicuity 6
 43 Rearguing or repeating objection after a ruling by
 the court 7
 17 Objecting to question after the answer has been
 given 8
 17 Objecting to question before question has been completely
 stated 9
 ____
 106

[3] At the close of the hearing, just before imposing sentence, the court informed Kurz' lawyer that the 53-page partial transcript, which merely repeated the excerpts already set out in the order to show cause, was in the file.

We are not advised how the excerpts were prepared, whether someone listened to the electronic recording and, on that basis, chose the excerpts to be transcribed, or whether the stenographic record of proceedings was transcribed and the excerpts taken from a larger transcript. Nor do we know whether this was done by the court reporter, the judge, or someone else.
Since we do not have a transcript of the entire proceedings, we do not have a transcript of the first three days and have no basis for appraising the court's statement in the order to show cause charging Kurz with "making numerous statements," interrupting opposing counsel and the court while they were speaking, nor do we have any basis for appraising the justification for the 125 objections he is said to have made during the first three days.
[4] Our disposition of this case makes it unnecessary for us to consider whether the nine-month delay in bringing the charges violated Kurz' right to a speedy trial or whether, as claimed by Kurz, he was charged with one continuing course of conduct. Nor need we decide whether Kurz was entitled to a jury trial because of the seriousness of the crime  the size of the penalty imposed or which he faced. Likewise, we do not decide whether the sentence exceeded the maximum sentence permitted by Michigan law (MCLA § 600.1715 [1] [Stat Ann 1962 Rev § 27A.1715(1)]) or was excessive, or was a consecutive as contrasted with a concurrent sentence. Nor need we decide whether Kurz was deprived of due process because he was not provided an adequate opportunity to prepare his defense when the court denied his motion for a transcript of the entire trial and his motion for a continuance and proceeded immediately to hear the matter.
[5] American Bar Association, Project on Standards for Criminal Justice, Standards Relating to the Defense Function, p 146.
[6] US Const, Am 6; Mich Const 1963, art 1, §§ 13, 20.
[7] People v. Matish, supra, p 572; Offutt v. United States (1954), 348 US 11, 13 (75 S Ct 11, 99 L Ed 11); Caldwell v. United States (CA 9, 1928), 28 F 2d 684; Sacher v. United States (1952), 343 US 1, 13 (72 S Ct 451, 457; 96 L Ed 717, 726); In re McConnell (1962), 370 US 230, 236 (82 S Ct 1288, 1292; 8 L Ed 2d 434, 438).
[8] See Jaikins v. Jaikins (1968), 12 Mich App 115; People v. Goodman (1969), 17 Mich App 175; People v. Nowicki (1969), 17 Mich App 525, reversed on other grounds (1971) 384 Mich 482; In re Colacasides (1967), 6 Mich App 298.
[9] People v. Matish (1971), 384 Mich 568, 572 (criminal contempt; conviction of attorney cited for failing to appear in court set aside); Panico v. United States (1963), 375 US 29 (84 S Ct 19, 11 L Ed 2d 1) (remanding a conviction of criminal contempt for a determination of whether the defendant was suffering from a mental disease which would have rendered him incapable of forming the criminal intent requisite for a finding of guilty).

"`Intent to defy the dignity and authority of the court * * * is a necessary element of criminal contempt.'" In the Matter of Rotwein (1943), 291 NY 116, 122 (51 NE 2d 669, 672); similarly, see United States v. Thompson (CA 2, 1963), 319 F2d 665, 670; Enterprise Foundry Co. v. Iron Molders' Union of North America, Local No. 186 (1907), 149 Mich 31, 34; Caldwell v. United States, supra; In re Watts (1903), 190 US 1, 32 (23 S Ct 718, 47 L Ed 933); Proudfit Loose Leaf Co. v. Kalamazoo Loose Leaf Binder Co. (CA 6, 1916), 230 F 120, 132.
The element of obstruction of the performance of judicial duty must "clearly be shown". Ex parte Hudgings (1919), 249 US 378, 383 (39 S Ct 337, 63 L Ed 656, 11 ALR 333), quoted approvingly in In re McConnell, fn 7 supra, p 234.
[10] ABA, Project on Standards for Criminal Justice, Standards Relating to the Defense Function, standard 7.1(d), p 257. Similarly, see In re McConnell, fn 7 supra.
[11] ABA, Project on Standards for Criminal Justice, Standards Relating to the Defense Function, commentary to standard 1.1(b), p 173.
[12] Ex Parte Terry (1888), 128 US 289 (9 S Ct 77, 32 L Ed 405); Cooke v. United States (1925), 267 US 517 (45 S Ct 390, 69 L Ed 767); In re Huff (1958), 352 Mich 402, 415.
[13] Harris v. United States (1965), 382 US 162, 165 (86 S Ct 352, 15 L Ed 2d 240).
[14] It has been suggested that some judges, overly protective of their power to punish for contempt, reluctant to share that power with another judge, would be tempted by the rule for which we write to exercise their summary power in the heat of controversy rather than to defer consideration until the conclusion of the trial. In confiding this enormous power to a judge, the law assumes that he is an honorable and upright man. If judges cannot be trusted to act with restraint in the exercise of the contempt power, then an underlying assumption on the basis of which the power is entrusted to them should be re-examined.
[15] Goldfarb, The Contempt Power; Harris v. United States, supra (a witness who refuses to answer a question is entitled to notice and hearing); Bloom v. Illinois (1968), 391 US 194 (88 S Ct 1477, 20 L Ed 2d 522) ("serious criminal contempts", where the contemnor faces a long sentence [Frank v. United States (1969), 395 US 147 (89 S Ct 1503, 23 L Ed 2d 162); Baldwin v. New York (1970), 399 US 66 (90 S Ct 1886, 26 L Ed 2d 437)] are subject to the jury trial provisions of the Constitution); People v. Johns (1970), 384 Mich 325, 333 ("conviction for criminal contempt can be sustained only upon a record which shows compliance with the procedural safeguards established for the prosecution of any other crime of equal gravity"); In re Henry (1971), 32 Mich App 654 (attorney failed to appear in court at scheduled time; held, since reasons for his absence may not be within personal knowledge of judge, and immediate punishment not essential to preserve power and dignity of the court, judge could not summarily, without notice to the attorney or giving him an opportunity to be heard, convict him of contempt).
[16] The present state of constitutional adjudication has been summarized as follows:

"The judge before whom courtroom misconduct occurs may impose appropriate sanctions, including punishment for contempt, but should refer the matter to another judge if his conduct was so integrated with the contempt that he contributed to it or was otherwise involved, or his objectivity can reasonably be questioned." ABA Project on Standards for Criminal Justice, Standards Relating to the Judge's Role in Dealing with Trial Disruptions (An Advance Report of Part of Standards Relating to the Function of the Trial Judge) Standard F.5, p 21.
[17] Cross Company v. UAW Local No. 155 (AFL-CIO) (1966), 377 Mich 202, 212, was decided before Mayberry.
[18] Although the judge who presides at the trial is advantaged by his recollection of what occurred and another judge would have to review a transcript, we are satisfied that where consideration of the contempt citation is deferred until after the trial is concluded and takes place days or, as in this case, months afterwards, when recollections are likely to have become foggy, a transcript of all the proceedings necessary to appraise the challenged conduct fully should be prepared and reviewed before any judgment is made, whether the contempt hearing were to be conducted by the trial judge or by another judge. This is certainly required where, as here, a large number of different and separate incidents form the basis of the contempt charges.