## VILLAGE OF ORCHARD LAKE v CONNOR

Docket No. 58733. Submitted November 3, 1982, at Detroit.—Decided
    April 5, 1983. Leave to appeal denied, 417 Mich __.

The Village of Orchard Lake sought and obtained an injunction
    prohibiting James A. Connor, Dorothy Connor, and Dorothy
    Connor, doing business as Orchard Lake Boat Livery, from
    enlarging a nonconforming use of certain property on Orchard
    Lake as a boat livery. The Oakland Circuit Court, Clark J.
    Adams, J., entered an order permanently enjoining the Con-
    nors from extending or enlarging their nonconforming use of
    "renting, leasing, storing, anchoring or otherwise permitting
    the storing or anchoring of power or sail boats in excess of six
    at any one time". Subsequently, the Connors kept ten "wind-
    surfers" on their property in addition to leasing space for one
    powerboat and five sailboats. The Village of Orchard Lake
    moved in the Oakland Circuit Court to hold the Connors in
    contempt of court for disobeying the court's previous order. The
    court, Robert B. Webster, J., held that the defendants contemp-
    tuously violated the court's order. The defendants appeal. *Held:*

The trial court's finding that the defendants were guilty of
    contempt for violating the court's previous order should be
    affirmed. The order was unambiguous and the Connors admit-
    ted that a "windsurfer" is a sailboat. Instead of proceeding to
    store and rent ten windsurfers, the defendants should have
    moved to have the trial court either modify or clarify its
    previous order so that there would be no question that they
    were not enlarging or extending their nonconforming use.

Affirmed.

BRONSON, P.J., dissented. He believes that proof beyond a
    reasonable doubt of the defendant's wilful disobedience of the
    court's previous order was not shown. He also would find that
    the order that was allegedly violated was ambiguous on its face,
    requiring an examination of its history to determine the intent

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 17 Am Jur 2d, Contempt § 34.
[2, 4] 17 Am Jur 2d, Contempt § 5.
[3] 17 Am Jur 2d, Contempt § 105.
[5, 6] 17 Am Jur 2d, Contempt § 52.

of the judge who entered the order. He believes that certain language in the order suggests that the order was intended only to cover cases in which the defendants permitted persons to store their own boats and that any ambiguity in the order should be resolved in the defendants' favor where there is no question of subterfuge. He would reverse.

### OPINION OF THE COURT

1. CONTEMPT — VIOLATION OF COURT ORDER — NONCONFORMING USE OF PROPERTY.

A finding that a party is guilty of contempt of court is proper where that party has violated an order of a court that that party not expand its nonconforming use of certain property and, if the party had a question as to whether his behavior was enlarging or extending his nonconforming use of the property, he should have requested the trial court to modify or clarify its order.

### DISSENT BY BRONSON, P.J.

2. CONTEMPT — CRIMINAL CONTEMPT.

*Disobedience of a court's orders may constitute criminal contempt where the disobedience is wilful.*

3. CONTEMPT — POWER TO PUNISH.

*The judiciary's power to punish for contempt must be applied judiciously and may be used only when the contempt is clearly and unequivocally shown.*

4. CONTEMPT — CRIMINAL CONTEMPT.

*An essential element of criminal contempt is culpable conduct in wilful disregard or disobedience of the authority or orders of the court or the intent to defy the dignity and the authority of the court; each element must be proven beyond a reasonable doubt in a criminal contempt case.*

5. MOTIONS AND ORDERS — EXPANSION OF ORDERS BY IMPLICATION.

*In contempt proceedings charging wilful violation of a court order the order of the court should not be expanded by implication beyond the meaning of its language when read in light of the issues raised and the purpose for which the suit which produced the order was brought.*

6. CONTEMPT — INJUNCTIONS — AMBIGUITY.

*Any ambiguity in an injunction issued by a court should be resolved in favor of the person charged with violating the*

*injunction where there is no question of subterfuge to violate the injunction and the party is charged with contempt of court.*

*Parenti, Treinen, Hohauser, Greenlees & Bunting, P.C.* (by *Robert V. Parenti*), for plaintiff.

*Rabette & O'Dea, P.C.* (by *P. Kelly O'Dea*), for defendants.

Before: BRONSON, P.J., and V. J. BRENNAN and J. H. GILLIS, JJ.

V. J. BRENNAN, J. The relevant facts of this case are set forth in Judge BRONSON's dissenting opinion. We affirm the trial court's finding that the defendants were guilty of contempt for violating a 1964 court order entered against them which stated in part:

"Defendants are hereby permanently enjoined and restrained from enlarging or extending their nonconforming use on their real property, or on the waters of Orchard Lake adjacent thereto, by renting, leasing, storing, anchoring or otherwise permitting the storing or anchoring of power or sail boats in excess of six (6) at any one time."

The defendants admitted that a "windsurfer" was a sailboat and that they kept approximately ten windsurfers on their property in addition to leasing space for one powerboat and five sailboats. The defendants rented the windsurfers and gave instructions on their use. Thus, considering the fact that the total number of power and sailboats rented, leased, stored or anchored on the defendants' property exceeded six, we find that the defendants disregarded the 1964 order.

We reject the defendants' claim that they acted in good faith because they believed that the refer-

ence to sailboats in the 1964 order did not include windsurfers. A belief that the 1964 order did not apply to windsurfers would be unreasonable when, by the defendants' own admission, a windsurfer is a sailboat. Also, the 1964 order clearly prohibited the defendants from enlarging or extending their nonconforming use. In other words, the order was designed to maintain the status quo. We can only conclude that the defendants knew that they were disobeying the 1964 order when they added the ten windsurfers to the six boats already kept on their property because, by storing and renting the windsurfers, defendants were, in effect, enlarging or expanding their operation of the boat livery in violation of the court's order. Instead of proceeding to store and rent the windsurfers, the defendants should have requested the trial court to either modify or clarify the 1964 order so that there would be no question that they were not enlarging or extending their nonconforming use.

Moreover, we find that the 1964 order was unambiguous. We disagree with the dissenting opinion's conclusion that the language of the order suggests that the order did not apply to the storage of the defendants' own boats on their property. We find that the order unequivocally states that the restrictions contained in the order apply to the storage of the defendants' own boats as well as to the storage of boats belonging to other persons.

Affirmed.

J. H. GILLIS, J. concurred.

BRONSON, P.J. *(dissenting).* Defendants appeal by right a determination that they acted in contempt of court. The trial court fined them $100.

In 1960, plaintiff sought to enjoin defendants from enlarging a nonconforming use. Defendants

or their predecessors in interest had operated a small boat livery on that site for over 40 years. Defendants had advertised the availability of mooring space on Orchard Lake for sailboats and powerboats. They had also proceeded with plans to improve a small utility building used in connection with the livery. The trial judge summarized the position taken by plaintiff:

"The village says that the Connors, in attempting to rent increased dockage space and by increasing the size of their utility building, are extending and enlarging a non-conforming use of their property as established by their zoning ordinance."

The trial judge rejected defendants' claim that the village's zoning ordinance was constitutionally invalid. After finding as fact that defendants had attempted to expand their prior use by renting dock space for more boats than had previously been moored on their property, the court held:

"Plaintiff village is entitled to injunctive relief. Such relief is equitable in character; it must be so directed as to be fair to the village and yet not destructive of the Connors' right to continue the operation of a boat livery. The court is of the opinion that the rental of space for six boats, either power or sail, would not constitute an extension or enlargement of the use of the Connors' land as a boat livery, and accordingly in Cause No. C-32291, an injunction may issue restraining the defendants from leasing more than six spaces for dockage of either power or sail boats."

The judge ordered preparation of a judgment encompassing the findings in his opinion. The judgment, which was entered in 1964, stated in part:

"Defendants are hereby permanently enjoined and restrained from enlarging or extending their noncon-

forming use on their real property, or on the waters of
Orchard Lake adjacent thereto, by renting, leasing,
storing, anchoring or otherwise permitting the storing
or anchoring of power or sail boats in excess of six (6) at
any one time."

In 1980, plaintiff brought a motion to hold defen-
dants in contempt for disobeying the 1964 order.
The judge who entered the order having left the
bench, the hearing on the motion was assigned to
a circuit judge with no previous involvement in
the matter.

A hearing on the court's order to show cause
was held. Defendant Michael Connor testified that
defendants leased mooring space for one power-
boat and five sailboats and that he kept about ten
"windsurfers" (a surfboard equipped with a mast
and sail) on his property. He rented the "windsur-
fers" and gave lessons on their use. The findings of
the trial court and the contentions on appeal of
both parties rest on the facts stated in Connor's
testimony. The trial judge held that defendants
contemptuously violated the court's order by keep-
ing the "windsurfers" on their proerty, because
that brought to more than six the number of
powerboats and sailboats kept there.

On appeal, defendants argue that they acted in
good faith and that the matters now in dispute
were not considered or adjudicated in the 1960-
1964 proceedings. Specifically, defendants claim
that the 1960 action was brought only to insure
that defendants did not engage in large-scale
rental of mooring space. Defendants cite the state-
ment, in the judge's written opinion, that "an
injunction may issue restraining the defendants
from leasing more than six spaces for dockage of
either power or sail boats".

In response, plaintiff argues that a court speaks

through its orders and judgments, not through its opinions. In light of defendants' stipulation that "windsurfers" are sailboats, plaintiff claims, there is no question that defendants were in contempt of the 1964 order.

Despite plaintiff's characterization of these proceedings, the relief (or sentence) ordered was punishment for an offense committed rather than a device to enforce the performance of an act. See *People v Johns,* 384 Mich 325, 330; 183 NW2d 216 (1971); *State Bar of Michigan v Cramer,* 399 Mich 116, 128; 249 NW2d 1 (1976). The fine defendants were ordered to pay must be considered punishment for criminal, not civil, contempt.

Criminal contempt penalties are used to punish misconduct which affronts the dignity of a court, *State Bar, supra,* p 127. Disobedience of a court's orders may constitute criminal contempt where the disobedience is wilful. *Enterprise Foundry Co v Iron Molders' Union of North America, Local No 186,* 149 Mich 31; 112 NW 685 (1907). The judiciary's power to punish for contempt must be applied judiciously and may be used only when the contempt is clearly and unequivocally shown. *People v Matish,* 384 Mich 568, 572; 184 NW2d 915 (1971). An essential element of criminal contempt is culpable conduct in wilful disregard or disobedience of the authority or orders of the court. *Matish, supra,* p 572. This element has also been defined as the intent to defy the dignity and the authority of the court. *People v Kurz,* 35 Mich App 643, 652, fn 9; 192 NW2d 594 (1971). In a criminal contempt case, each element must be proven beyond a reasonable doubt. *Fraternal Order of Police, Lodge #98 v Kalamazoo County,* 82 Mich App 312, 317; 266 NW2d 805 (1978).

Upon my review of the entire record, I am

convinced that proof beyond a reasonable doubt of
defendants' wilful disobedience of the 1964 order
was not shown. In contempt proceedings charging
wilful violation of a court's order, the order will
not be expanded by implication beyond the mean-
ing of its language when read in light of the issues
raised and the purpose for which the suit which
produced the order was brought. *Terminal Rail-
road Ass'n of St Louis v United States,* 266 US 17,
29; 45 S Ct 5; 69 L Ed 150 (1924). I reject plaintiff's
claim that an examination of the proceedings re-
sulting in a court order allows a party to attack
the order collaterally. I agree with defendants that
an examination of the proceedings resulting in a
court order may disclose facts important to a
determination of wilfulness in disobeying the or-
der. The issue of defendants' storage of "windsur-
fers" or similar small craft for rental to the public
was neither decided nor anticipated.

I also find that the order allegedly violated was
ambiguous on its face, requiring an examination of
its history to determine the intent of the judge
who entered the order. The relevant paragraph
stated:

"Defendants are hereby permanently enjoined and
restrained from enlarging or extending their non-con-
forming use on their real property, or on the waters of
Orchard Lake adjacent thereto, by renting, leasing,
storing, anchoring or *otherwise permitting* the storing
or anchoring of power or sail boats in excess of six (6) at
any one time."

The use of the phrase I have emphasized strongly
suggests that the order was intended only to cover
cases in which defendants in some way permitted
persons to store boats on their property, not cases
in which defendants stored their own boats. This

interpretation is supported by a review of the proceedings which led to the issuance of the order. Moreover, given the standard of proof to be applied, I believe that any ambiguity should be resolved in the defendants' favor where there is no question of subterfuge. See *Hipp v Buhl Optical Co,* 282 Mich 128; 275 NW 793 (1937).

I would reverse.