*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ESTATE OF LOIS C. WASHINGTON.

---

CONLY K. CROSSLEY, Personal Representative
of the ESTATE OF LOIS C. WASHINGTON, and
ARIEL ELLIS,

       Appellees,

v

VERA WASHINGTON,

       Appellant.

UNPUBLISHED
June 25, 2019

No. 337467
Monroe Probate Court
LC No. 2011-000343-DE

---

*In re* LOIS C. WASHINGTON TRUST.

---

CONLY K. CROSSLEY, Special Fiduciary for
LOIS C. WASHINGTON TRUST,

       Appellee,

v

VERA WASHINGTON,

       Appellant.

Nos. 337467
Monroe Probate Court
LC No. 2014-000032-TT

---

*In re* LOIS C. WASHINGTON TRUST.

---

CONLY K. CROSSLEY, Special Fiduciary for
LOIS C. WASHINGTON TRUST,

-1-

v

ARIEL ELLIS,

Appellant.

No. 341187
Monroe Probate Court
LC No. 2014-000032-TT

Before: MURRAY, C.J., and STEPHENS and SHAPIRO, JJ.

PER CURIAM.

These consolidated appeals involve both the estate and the trust of Lois Washington ("the decedent"), who died in 2011. She was survived by several children and named her daughter, appellant Vera Washington ("Vera"), as co-personal representative of her estate and co-trustee of her trust. In July 2016, the probate court found Vera in contempt for failing to prepare and file appropriate accountings and inventories for the estate and the trust, and for refusing to sign a deed transferring certain property back to the estate. Vera had earlier signed a deed transferring the property to herself, contrary to the terms of the decedent's trust. In February 2017, the probate court sentenced Vera to a seven-day jail term for contempt for her refusal to sign the deed. The court also ordered Vera to serve time in jail until she satisfied her obligation to file proper accountings and inventories, or the interested parties agreed to waive the filing of those documents. In Docket No. 337467, Vera now appeals as of right the judgment of contempt, which was entered in both the estate case and the trust case.

Appellant Ariel Ellis ("Ariel") is Vera's daughter and a beneficiary of the trust. In Docket No. 341187, Ariel appeals as of right, challenging the probate court's order approving the petition of special fiduciary, appellee Conly Crossley, to divide, distribute, and sell some of the trust property.

In Docket No. 337467, we vacate Vera's conviction and fine of criminal contempt for refusing to sign the deed, but affirm the probate court's order of civil contempt for failure to prepare appropriate inventories and accountings. In Docket No. 341187, we affirm the probate court's order approving the division, distribution, and sale of trust property.

I. DOCKET NO. 337467

In Docket No. 337467, Vera challenges the probate court's order holding her in contempt for refusing to sign a deed to return real property to the decedent's trust, and for failing to prepare and file appropriate inventories and accountings for the periods she served as fiduciary of the estate and trust. We review a trial court's issuance of a contempt order for an abuse of discretion. *Porter v Porter*, 285 Mich App 450, 454; 776 NW2d 377 (2009). Reversal is warranted only when the trial court's decision is outside the range of principled outcomes. *Id.* at 455. The trial court's factual findings are reviewed for clear error, and any questions of law are reviewed de novo. *Id.*; *In re Contempt of Henry*, 282 Mich App 656, 668; 765 NW2d 44 (2009).

-2-

A finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made. *In re Contempt of Henry*, 282 Mich App at 669.

## A. CRIMINAL CONTEMPT

After the decedent's death in 2011, Vera and her sibling, Gregory, were appointed co-personal representatives of the decedent's estate. Approximately two years later, they were removed after questions arose regarding the disposition of many of the estate assets. Ida Jean Washington-Joy ("Ida Jean") was named as successor personal representative, but she was removed approximately a year later and replaced by Conley Crossley, an independent personal representative. During this time, however, Vera continued to serve as a co-trustee of the decedent's trust. The other co-trustee, Gregory, resigned as co-trustee in December 2014. On February 5, 2015, the probate court suspended Vera as trustee and replaced her with Crossley as special fiduciary for the trust.

In 2015, the probate court conducted a lengthy evidentiary hearing to determine which of two competing versions of the decedent's trust was controlling. The two trusts differed as to the disposition of property on Tuttle Hill Road in Milan Township (the "Tuttle Hill property"). The Tuttle Hill property was a single parcel of land on which there were two residential buildings. According to the trust offered by Vera, the entire parcel was to be awarded to Vera. According to the trust offered by Vera's sibling, Gregory, the residence at 12991 Tuttle Hill was awarded to Gregory, and the other residence at 12927 Tuttle Hill was awarded to Vera. At the time of the hearing, Vera, acting as trustee, had already conveyed the entire parcel to herself, individually. Throughout these proceedings, Vera and Ariel resided at the residence at 12991 Tuttle Hill. The court resolved the issue in favor of the version of the trust offered by Gregory. Accordingly, it determined that Vera had wrongfully conveyed the entire parcel to herself.

The newly appointed special fiduciary, Crossley, determined that the property had to be surveyed and divided in order to distribute the residences to Vera and Gregory as separate parcels in accordance with the terms of the trust. In addition, the entire parcel contained other land that could be partitioned off and sold to benefit other beneficiaries. Before that could be done, however, it was necessary to clear the title to the property because Vera, in her capacity as trustee, had previously conveyed the entire parcel to herself, individually. Accordingly, Crossley requested that Vera convey her interest in the property back to the trust so that the property could be distributed in accordance with the terms of the trust.

In July 2016, the probate court ordered Vera to sign a deed that Crossley had prepared conveying her interest in the Tuttle Hill property to the trust. When Vera refused to sign the deed, the court found her in contempt. The court delayed imposing any sanction for her contempt in order to provide her an opportunity to purge the contempt by signing the deed. Alternatively, the court considered entering its own order to void the earlier deed conveying the property to Vera.

Vera refused to sign a deed to return the Tuttle Hill property to the trust, but in September 2016, the probate court entered an order voiding Vera's improperly conveyed interest in the property. Later, however, in February 2017, the probate court sentenced Vera to a seven-day jail term for criminal contempt for her refusal to execute a deed as ordered by the court.

On appeal, Vera now argues that she did not receive proper notice that she was facing a charge of criminal contempt for refusing to sign the deed and that it was improper to convict her of criminal contempt because, by the time she was sentenced, the contempt had been purged by the court's order voiding the original deed. We agree.

Because the probate court found that Vera committed a direct act of contempt by refusing to sign the deed, the court could have summarily found her guilty of contempt without prior notice of the charge. MCL 600.1711(1) provides:

> When any contempt is committed in the immediate view and presence of the court, the court may punish it summarily by fine, or imprisonment, or both.

Summary conviction and punishment for contempt occurring in the court's presence and view accords due process of law. *In re Contempt of Warriner*, 113 Mich App 549, 554-555; 317 NW2d 681 (1982), remanded on other grounds 417 Mich 1100.26, 338 NW2d 888 (1983).

For criminal contempt, "a willful disregard or disobedience of a court order must be clearly and unequivocally shown . . . and must be proven beyond a reasonable doubt." *DeGeorge v Warheit*, 276 Mich App 587, 592; 741 NW2d 384 (2007). There must be proof that the person acted culpably or in " 'willful disregard or disobedience of the authority or orders of the court.' " *People v Little*, 115 Mich App 662, 665; 321 NW2d 763 (1982) quoting *People v Kurz*, 35 Mich App 643, 652; 192 NW2d 594 (1971). See also MCL 600.1701(g).

Under MCL 600.1711(1), the court was authorized to summarily punish Vera when she refused to sign the deed to transfer property back to the trust, contrary to the court's order to do so. The probate court ruled that Vera had engaged in self-dealing, ordered her to execute a deed in favor of the trust, and she refused repeatedly to do so. That was an act committed in the probate court's immediate view and presence, which the court was authorized to summarily punish.

However, the probate court did not immediately punish Vera, but instead gave her an opportunity to purge the contempt. A court is permitted to impose punishment summarily for a contemptuous act committed in the court's presence because immediate corrective action is necessary. "[T]he contempt power is to be exercised with great restraint . . . and a court should use the least possible sanction adequate to achieve the proper end sought[.]" *In the Matter of Hague*, 412 Mich 532, 559; 315 NW2d 524 (1982). Thus, if the contemptuous act requires a summary response by the court, the need for immediate punishment should be apparent. Deferring summary punishment for contempt is regarded with disfavor. See *In re Contempt of Scharg*, 207 Mich App 438, 439; 525 NW2d 479 (1994); *Kurz*, 35 Mich App at 656-661. In this case, the probate court found no immediate need to punish Vera, but rather gave her a means to purge the contempt.

Although the probate court may have intended to criminally punish Vera for not following the court's directive to sign the deed, the court provided a way for Vera to purge the contempt by signing the deed before September 19, 2016. Because the court provided a way for Vera to purge the contempt, this became a civil contempt.

MCL 600.1715 provides:

(1) Except as otherwise provided by law, punishment for contempt may be a fine of not more than $7,500.00, or imprisonment which, except in those cases where the commitment is for the omission to perform an act or duty which is still within the power of the person to perform shall not exceed 93 days, or both, in the discretion of the court. The court may place an individual who is guilty of criminal contempt on probation in the manner provided for persons guilty of a misdemeanor as provided in chapter XI of the code of criminal procedure, 1927 PA 175, MCL 771.1 to 771.14a.

(2) If the contempt consists of the omission to perform some act or duty that is still within the power of the person to perform, the imprisonment shall be terminated when the person performs the act or duty or no longer has the power to perform the act or duty, which shall be specified in the order of commitment, and pays the fine, costs, and expenses of the proceedings, which shall be specified in the order of commitment.

Civil contempt involves the court's use of power to coerce compliance with a present or future obligation or to compensate the complainant. *Porter*, 285 Mich App at 455-456. Criminal contempt, whether it is direct or indirect, serves the purpose of punishing the contemnor for past conduct that affronts the court's dignity. *Id*. at 455. A court exercising criminal contempt powers is not attempting to force compliance with its order and, therefore, it is impossible to purge this sort of contempt by acting in a certain manner. *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 713; 624 NW2d 443 (2000).

In July 2016, although the probate court may have had the authority to convict Vera of criminal contempt for her refusal to sign the deed, its order was intended to coerce Vera into compliance. The court stated in its July 26, 2016 order that it found Vera "to be in direct criminal contempt," but the order also provided that Vera could purge that contempt by signing the deed before September 19, 2016. Thus, the court's finding of contempt was for civil contempt. Therefore, the probate court erred by sentencing Vera in February 2017 as if she had been found guilty of criminal contempt. Furthermore, by that time, the court had resolved the issue of the deed by entering an order voiding the original deed signed by Vera. That ended any contempt by Vera because there was nothing more to coerce by the time of sentencing. See *In re Contempt of Rochlin*, 186 Mich App 639, 647-648; 465 NW2d 388 (1990); MCL 600.1715(2).

As Vera argues, any authority that the probate court had to jail her ended when the basis for the contempt charge was purged. In *In re Contempt of Rapanos*, 143 Mich App 483, 496-497; 372 NW2d 598 (1985), this Court explained:

Another test of whether contempt is civil or criminal involves consideration of the subsequent conduct: the "after-the-fact determination". Hence, where an individual's conduct has altered the status quo so that it cannot be restored or the relief intended has become impossible, there is criminal contempt; yet, where the individuals' [sic] noncompliance with the court order is such that the status quo can be restored and it is still possible to grant the relief originally sought, there is civil contempt. [Citations omitted.]

Under MCL 600.1715(2), any authority the probate court had to jail Vera for her contempt in refusing to sign the deed ended with the court's order voiding the offending instrument. Accordingly, we vacate Vera's conviction of criminal contempt and the associated $1,000 fine. In light of our decision, it is unnecessary to address Vera's remaining issues regarding that conviction.

## B. CIVIL CONTEMPT

After Crossley was appointed special fiduciary, the probate court ordered Vera to file appropriate inventories and accountings for the periods that she served as personal representative and trustee. When she failed to do so as ordered, the court found her in civil contempt. Vera appeals that decision.

One may be held in civil contempt for failing to comply with a court's order, without a finding that there was willful disobedience. *Arbor Farms, LLC v GeoStar Corp*, 305 Mich App 374, 386-387; 853 NW2d 421 (2014); *Davis v City of Detroit Fin Review Team*, 296 Mich App 568, 625; 821 NW2d 896 (2012). Contempt committed outside the presence of the court is indirect contempt of court and may be found only after proof of the facts charged is made by affidavit or other method and an opportunity has been given to defend. MCL 600.1711(2); *In re Contempt of Henry*, 282 Mich App at 675. Indirect contempt of court may only be punished in conformance with statute, MCL 600.1711(2), court rule, MCR 3.606, and due process. *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App at 713.

The record reveals a long history of the probate court's efforts to have Vera file proper accountings and inventories for the time periods she served as trustee and personal representative. While Vera attempted to file documents that she claimed were proper accountings and inventories, they were merely packages of documents that did not meet the requirements of an accounting or inventory, they did not cover the appropriate periods that she served as a fiduciary, and they did not distinguish between trust and estate assets. The filings did not enable Crossley to fulfill his fiduciary obligation to marshal an account for assets of the estate or, later, the trust. While Vera argues that she could not be held in contempt because there are no actual standards for how an accounting should be prepared, Vera had a duty to maintain an inventory of the estate's assets and to account for their disposition. Vera was repeatedly told that she had failed to account for the entire time where she was trustee. Further, the court recognized that Vera might have difficulty understanding the proper form of an accounting or inventory, so it directed Vera to meet with Crossley and her own attorneys to attempt to rectify the accounting deficiencies so that Crossley could determine what happened to certain assets. It was explained to Vera that if she did not meet with Crossley and her attorneys as ordered by the court, she could go to jail for contempt. She failed to attend these meetings as ordered. At the time of sentencing, Vera argued that she had prepared the accountings on her own as ordered, but her filings were grossly deficient and the court explained that it had required her to meet with the others to resolve these deficiencies. The court held an evidentiary hearing where Vera had counsel present prior to finding her in contempt. The court did not hold Vera in contempt

because of some minor deficiencies in her paperwork, but because of her persistent refusal to account for the status of assets that she had control over as fiduciary of the estate and trust, or to cooperate with her successor to determine the scope and status of the estate's assets. The probate court did not clearly err or abuse its discretion by holding Vera in civil contempt. Vera's refusal to attend the meetings as directed by the court left numerous questions about the status of estate assets that were not addressed in the documents that Vera had previously filed.[1]

Vera argues that the probate court's contempt order was invalid because it did not identify an act or duty that she alone could perform to avoid incarceration.

Vera correctly observes that an order of civil contempt must specify the act or duty that must be performed to terminate an order of incarceration. MCL 600.1715(2) provides:

> If the contempt consists of the omission to perform some act or duty that is still within the power of the person to perform, the imprisonment shall be terminated when the person performs the act or duty or no longer has the power to perform the act or duty, which shall be specified in the order of commitment, and pays the fine, costs, and expenses of the proceedings, which shall be specified in the order of commitment.

The court gave Vera two options to purge the contempt:

> Option A: There shall be filed with the Court complete and accurate trust and estate corrected inventories and accountings, approved and signed by Vera Washington's counsel and attorney Conly Crossley.

> Option B: Alternatively, Vera Washington through counsel, should prepare and secure the interested parties' signatures on a stipulation that preparing complete and accurate trust and estate corrected inventories and accountings is impossible and that all parties waive said filings so that the case may move forward.

In this case, it was within Vera's power to prepare the prescribed accountings and inventories to be submitted to Crossley for her approval. Indeed, Vera's attorneys and Crossley had already prepared proposed accountings through their own meetings that Vera failed to attend. Although Vera argues that she lacked the ability to comply with this requirement because it was conditioned on Crossley approving and signing the accountings, Vera never complied with the initial requirement that she submit "complete and accurate trust and corrected inventories and accountings," which she clearly had the ability to do, and she would not cooperate with Crossley to address any deficiencies in the documents that Crossley had compiled from the limited

---

[1] Vera identifies certain inaccuracies in the court's statements and orders, mostly pertaining to dates of various events, and argues that the probate court's decision to hold her in contempt was based on inaccurate information. None of these alleged inaccuracies were a basis for the court's finding of contempt. Accordingly, they are harmless. MCR 2.613(A).

information available. The documents that Vera did submit were not in the form of an accounting or inventory, did not they cover the entire period in which she served as fiduciary, and did not distinguish between estate and trust assets. Alternatively, Vera could obtain waivers from other interested parties to waive her filing of the accountings and inventories so that the estate could be wrapped up.

Vera complains that the probate court improperly sought to coerce her to sign proposed accountings and inventories, prepared by Crossley and Vera's own attorneys that were incomplete and inaccurate. We disagree. The court did not attempt to coerce Vera to sign inaccurate filings. Instead, it properly recognized that she had a duty to file accurate accountings and inventories, and it sought to compel her to file those documents or cooperate with Crossley and her attorneys to enable them to determine the status of the estate's and trust's assets for the purpose of preparing the necessary accountings and inventories. To the extent that Vera believed that the proposed accountings and inventories prepared by the others were incomplete and inaccurate, she still had a duty to cooperate with them to make the necessary corrections to fulfill her fiduciary obligations.

In sum, the probate court did not err by holding Vera in civil contempt for not complying with the court's orders to file appropriate accountings and inventories, or to cooperate with the special fiduciary to enable appropriate accountings and inventories to be prepared and filed.

## II. DOCKET NO. 341187

### A. DUE PROCESS

The Tuttle Hill property consisted of one larger parcel that included two separate residential homes. The decedent's trust awarded different portions of the property to different beneficiaries. While this matter was pending, Ariel and Vera had been residing at the residence that was to be awarded to Gregory under the decedent's trust. Because the decedent had awarded different portions of the property to different beneficiaries, Crossley filed a petition to divide the property into smaller parcels and distribute them in accordance with the terms of the decedent's trust. In Docket No. 341187, Ariel argues that the probate court erred by approving Crossley's petition to divide, distribute, and sell the Tuttle Hill property without affording her due process. We disagree.

Preliminarily, we note that Ariel raises several claims that exceed the scope of this appeal. "With respect to probate cases, this Court has jurisdiction of an appeal of right from '[a] judgment or order . . . from which appeal of right to the Court of Appeals has been established by law or court rule.' " *In re Beatrice Rottenberg Living Trust*, 300 Mich App 339, 353; 833 NW2d 384 (2013), quoting MCR 7.203(A)(2). MCR 5.801 provides that appeals by right to this Court are limited to final orders of the probate court, and MCR 5.801(A) defines those orders that qualify as final orders. Ariel filed a claim of appeal only from the probate court's order approving Crossley's petition to divide, distribute, and sell the Tuttle Hill property. On appeal, however, Ariel raises issues related to the probate court's approval of Crossley's second account as fiduciary and award of fiduciary fees. These additional matters were decided by separate orders, each of which qualified as a final order under MCR 5.801(A)(2)(x) (defining a final order as an order "allowing or disallowing an account, fees, or administration expenses"). Ariel did

not file a claim of appeal from these separate orders. Because this appeal is limited to the order dividing and distributing the Tuttle Hill property, this Court does not have jurisdiction to review Ariel's claims involving Crossley's second account and the award of fiduciary fees.

With regard to the order properly before this Court, Ariel argues that her right to procedural due process was violated because she did not receive timely notice of the October 31, 2017 hearing at which the probate court considered Crossley's petition to divide, distribute, and sell the Tuttle Hill property. We disagree. "Whether a party has been afforded due process is a question of law, subject to review de novo." *In re Contempt of Henry*, 282 Mich App at 668. Whether a party received sufficient notice to satisfy due process is a legal question that is also reviewed de novo. *In re Baldwin Trust*, 274 Mich App 387, 396; 733 NW2d 419 (2007), aff'd 480 Mich 915 (2007).

As this Court observed in *In re TK*, 306 Mich App 698, 706; 859 NW2d 208 (2014), "[p]rocedural due process requires notice and a meaningful opportunity to be heard before an impartial decision-maker." Ariel complains that she did not receive proper notice of the October 31, 2017 hearing at which the probate court considered Crossley's petition to divide, distribute, and sell the Tuttle Hill property, and that she was unable to attend that hearing to raise her objections. Regardless of whether Ariel had proper notice of that hearing, the record shows that the probate court only conditionally granted Crossley's petition at that time, subject to any objections Ariel might have brought. The court protected Ariel's right to due process by delaying a final decision on Crossley's petition until November 14, 2017, to afford Ariel an opportunity to appear before the court at that time and raise any objections to the petition. When Ariel did not timely appear on that date, the court granted the petition.

The probate court's October 27, 2017 order denying Ariel's motion to adjourn the October 31 hearing provided her with notice that she could raise objections at a hearing scheduled for November 14, 2017. Because the court only conditionally granted Crossley's petition, subject to any objections by Ariel, this procedure afforded Ariel with a meaningful opportunity to be heard. Ariel was also aware that the November 14 hearing was scheduled to commence at 9:00 a.m. because that time was set at the hearing on September 6, 2017, and it was also included in the court's September 6, 2017 order, which was served on Ariel. Indeed, Ariel does not claim that she did not have notice that the November 14 hearing was scheduled to begin at 9:00 a.m. Despite this notice and an opportunity to be heard, Ariel failed to timely appear for the hearing. By not timely appearing, Ariel waived any objections. Accordingly, Ariel's right to procedural due process was not violated.

Further, the probate court did not err by approving Crossley's petition to divide, distribute, and sell the Tuttle Hill property. Division of the property was necessary because the decedent had awarded different portions to different beneficiaries. Crossley investigated how she could best fulfill the decedent's wishes to divide the Tuttle Hill parcel to award the separate residences to Vera and Gregory, consistent with the decedent's wishes. It appears that Ariel objected to Crossley's proposal to sell a narrow landlocked portion of property to Walter Washington, who owned an adjoining parcel. However, township approval was needed to divide the property, and the township would not approve any division that would leave a portion of the property landlocked. The probate court approved Crossley's proposed division and distribution

because it was consistent with the decedent's intent and it satisfied the township's requirements for approval of any division. Accordingly, we find no error.

## B. SUBJECT-MATTER JURISDICTION

Ariel also argues that the probate court lacked subject-matter jurisdiction to decide this matter. We disagree. Issues involving subject-matter jurisdiction may be raised at any time, even on appeal. *Maxwell v Dep't of Environmental Quality*, 264 Mich App 567, 574; 692 NW2d 68 (2004). " 'Whether the trial court had subject-matter jurisdiction is a question of law that this Court reviews de novo.' " *Bank v Mich Ed Ass'n-NEA*, 315 Mich App 496, 499; 892 NW2d 1 (2016) (citation omitted).

Subject-matter jurisdiction is the power of the court to decide the type of case—not the particular case before it. *Bowie v Arder*, 441 Mich 23, 39; 490 NW2d 568 (1992). "The probate court . . . is a court of limited jurisdiction, deriving all of its power from statutes." *Manning v Amerman*, 229 Mich App 608, 611; 582 NW2d 539 (1998). Under MCL 600.841(1)(a), the probate court has jurisdiction and power as conferred upon it under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*. The trust case was initiated in 2014 when Gregory registered the trust and filed a petition to distribute property to him in accordance with the terms of the trust. The EPIC governs the application of a trust in Michigan. *In re Stillwell Trust*, 299 Mich App 289, 294; 829 NW2d 353 (2012).

MCL 700.1302 provides that the probate court "has exclusive legal and equitable jurisdiction" over the following matters:

> (b) A proceeding that concerns the validity, internal affairs, or settlement of a trust; the administration, distribution, modification, reformation, or termination of a trust; or the declaration of rights that involve a trust, trustee, or trust beneficiary, including, but not limited to, proceedings to do all of the following:

> (*i*) Appoint or remove a trustee.

> (*ii*) Review the fees of a trustee.

> (*iii*) Require, hear, and settle interim or final accounts.

> (*iv*) Ascertain beneficiaries.

> (*v*) Determine a question that arises in the administration or distribution of a trust, including a question of construction of a will or trust.

> (*vi*) Instruct a trustee and determine relative to a trustee the existence or nonexistence of an immunity, power, privilege, duty, or right. . . .

Thus, the probate court has jurisdiction over proceedings involving the distribution of a trust and the declaration of rights that involve a trust or trust beneficiary.

The Tuttle Hill property was an asset of the decedent's trust. As special fiduciary, Crossley was responsible for administering the trust and distributing that asset in accordance with the decedent's intent. The decedent awarded separate parcels of the Tuttle Hill property to different beneficiaries, so it was necessary to divide that property in order to distribute it in accordance with the decedent's intent. Because Crossley's petition pertained to the distribution of a trust asset and sought approval for the property's division to best accomplish the decedent's intent to distribute different parcels to different beneficiaries, the probate court had jurisdiction to decide the matter. Although Ariel argues that the probate court did not have jurisdiction to decide any matters regarding the occupancy of 12991 Tuttle Hill Road because that was an issue that only a district court had jurisdiction to decide, the probate court did not decide any issues involving occupancy in the October 31, 2017 order that is the subject of this appeal. Accordingly, we reject Ariel's challenge to the probate court's jurisdiction over this matter.

In Docket No. 337467, we vacate Vera Washington's criminal contempt conviction and $1,000 fine, but affirm the probate court's order of civil contempt. In Docket No. 341187, we affirm the probate court's order approving the division, distribution, and sale of the Tuttle Hill property.

/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro